IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM WERTMAN,<br><br>             Petitioner,<br><br>vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>             Respondent. | No. 9:15-cv-00941-JKS<br><br>MEMORANDUM DECISION |

Adam Wertman, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition and throughout briefing in this case, Wertman was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Mid-State Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup. doccs.ny.gov/, Department ID Number 12-B-0280), indicates that Wertman was conditionally released to parole supervision on April 6, 2016. Wertman has not filed a change of address with this Court. Respondent has answered the Petition, and Wertman has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On June 2, 2011, Wertman was charged with first-degree criminal contempt, criminal obstruction of breathing or blood circulation, and second-degree harassment after his on-again/off-again girlfriend informed police that Wertman had beaten and strangled her. Wertman

---

    [1] Because Wertman has been conditionally released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted as Respondent. FED. R. CIV. P. 25(c).

was subsequently indicted on 13 counts of aggravated criminal contempt, 4 counts of criminal obstruction of breathing or blood circulation, and 9 counts of second-degree harassment, stemming from incidents which spanned from January 5, 2011, to May 15, 2011.

On May 4, 2012, Wertman elected to waive his right to a jury trial after the court explained that 8 or 10 prospective jurors might have seen Wertman in restraints as he was led into the courthouse. The court offered to provide an instructive to the jury, but defense counsel informed the court that Wertman now preferred to have a bench trial. During the course of the bench trial, the prosecution presented the testimony of three people, including the victim, a friend who had observed one of the incidents, and an expert in domestic violence. Wertman presented the testimony of his work friend and a friend of his mother's, who both testified that the victim had pursued and harassed Wertman in spite of the 2010 protection order she had against him.

At the conclusion of trial, the court found Wertman guilty of 5 counts of aggravated criminal contempt, 3 counts of obstruction of breathing or blood circulation, and 2 counts of second-degree harassment. The court then adjudicated Wertman a second felony offender and sentenced him to indeterminate prison terms of 2 to 4 years on the contempt counts, 1 year on the obstruction of breathing or blood circulation counts, and 15 days on the harassment counts. The court ordered the sentences to run concurrently and also issued a permanent order of protection.

Through counsel, Wertman appealed his conviction, arguing that: 1) the verdict was against the weight of the evidence; 2) the trial court improperly admitted evidence of his past

crimes in violation of *Ventimiglia* and *Molineux*;[2] 3) the trial court's erroneous *Sandoval*[3] ruling deprived him of his right to testify; 4) the trial court erred in refusing to admit his alibi evidence as untimely; and 5) his sentence was harsh and excessive. On February 14, 2014, the Appellate Division issued a reasoned decision unanimously affirming the judgment against Wertman in its entirety. *People v. Wertman*, 980 N.Y.S.2d 688, 691 (N.Y. App Div. 2014). Wertman sought leave to appeal the denial to the Court of Appeals, which was summarily denied on May 12, 2014. *People v. Wertman*, 11 N.E.3d 726 (N.Y. 2014). Wertman's conviction became final on direct review 90 days later, when his time to file a petition for *certiorari* in the Supreme Court expired on August 12, 2014. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

Wertman timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court on June 22, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Wertman asserts four grounds for relief. First, he argues that he was deprived of his right to a jury trial after a number of prospective jurors saw him in shackles (Ground 1). Wertman next contends that his trial and appellate counsel rendered ineffective assistance (Grounds 2, 4). Third, Wertman claims that the prosecution failed to

---

[2] *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981); *People v. Molineux*, 61 N.E. 286 (N.Y. 1901). "*Ventimiglia*" is a shorthand reference to the New York procedure for determining in advance whether evidence of prior crimes is probative for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or 5) identity, and for determining whether that probative value outweighs the prejudicial effect.

[3] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (a shorthand reference to the New York procedure for determining in advance whether evidence of prior crimes is admissible for impeachment purposes in the event the defendant testifies).

3

provide him certain *Brady*[4] material (Ground 3a). Finally, Wertman argues that the trial court erroneously admitted evidence of his prior crimes against the victim.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Wertman has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show

5

cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A.     Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot.

*United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As previously mentioned, the record before this Court indicates that Wertman has been conditionally released from prison to parole supervision. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Accordingly, because Wertman is still in the custody

of the New York DOCCS[5] and, in any event, still subject to collateral consequences of his conviction, Wertman's Petition has not been rendered moot by his release from prison.

B.     Exhaustion

Respondent correctly contends that the majority of Wertman's claims are unexhausted and procedurally defaulted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d

---

[5] A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date. *See* N.Y. Department of Corrections and Community Supervision Website, *Offender Information Data Definitions*, http://www.doccs.ny.gov/calendardatadefinitions.html (noting under "conditional release date" that "[i]f an inmate is conditionally released, he or she will be under parole supervision of some level until his or her term expires (i.e., when the maximum expiration date is reached.")).

68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121.

As Respondent argues, Wertman did not raise in state court his jury trial, ineffective assistance, and *Brady* claims. Accordingly, these claims are unexhausted. Further, his unexhausted claims are procedurally barred. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). Because Wertman may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review.[6] *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

C.     Merits

In any event, even if Wertman had fully exhausted those claims, he still would not be entitled to relief on them. For the reasons discussed below, the Court also denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

---

[6] This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). Even if Wertman could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require that the Court deny his stay request because, as discussed *infra*, the claims are "plainly meritless." *Rhines*, 544 U.S. at 277. Likewise, a stay would be futile because, as discussed *supra*, a New York court would deny the claims as procedurally defaulted.

exhaust the remedies available in the courts of the State."). And as further discussed below, the Court further denies relief on the merits of the *Molineux* claim he exhausted in state court.

Ground 1.    *Violation of Right to Jury Trial*

Wertman first argues that he was forced to waive a jury trial because some potential jurors saw him in handcuffs and leg irons. The record indicates that, at the beginning of trial, the court explained that 8 or 10 prospective jurors might have seen Wertman in restraints as he was led in to the courthouse. The court offered to provide a curative instruction to the jury, but counsel advised the court that Wertman preferred to have a bench trial because he had "no faith in the jury system."[7] Counsel stated that Wertman had "faith in Your Honor and believes that he'll receive a fair trial only through a non-jury or bench trial." Wertman himself told the court that he preferred a bench trial because a domestic violence march had recently been held, he believed prospective jurors were upset by domestic violence, and he was concerned that the jury would not approve of a tattoo on his hand. Wertman stated, "I just feel like it's a better decision to go this way . . . [t]hat way everybody can hear everything and, you know, hopefully the truth will come out."

It is well-settled that a criminal defendant may waive his constitutional right to a trial by jury if the waiver is "knowing, voluntary, and intelligent." *Marone v. United States*, 10 F.3d 65, 67-68 (2d Cir. 1993); *see also Patton v. United States*, 281 U.S. 276, 312 (1930) (requiring "express and intelligent consent of the defendant" to waive a jury trial). This decision to waive the right to a jury trial is of such fundamental importance that it cannot be made by counsel; the

---

[7] Because Wertman waived jury trial, the record does not indicate that the trial court ascertained whether any jurors had, in fact, seen Wertman in restraints.

decision belongs to the defendant alone. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to . . . waive a jury").

In determining whether a defendant has knowingly, voluntarily and intelligently consented to waiving the right to a jury trial, the court must consider the specific circumstances of the case. Here, the record demonstrates that Wertman himself wished to avoid a jury trial and was not coerced in any way to waive that right. Thus, Wertman's argument that he did not voluntarily waive his right to a jury trial simply cannot be accepted. Indeed, at no part during the proceedings did he rescind the waiver, nor did he protest his being tried by the court. Wertman's jury trial claim therefore must fail.

Grounds 2, 3. *Ineffective Assistance of Counsel*

Wertman next contends that both trial and appellate counsel rendered ineffective assistance. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668 , 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Wertman must show that his counsel's representation were not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability

11

that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the

outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Wertman's ineffective assistance claims must fail, however, even under the more favorable New York standard. Wertman states that he was "constructively" denied trial counsel when he was unable to pay counsel in full[8] and counsel grew hostile towards Wertman. In support, Wertman merely contends that counsel "refused to take several actions such as raising certain objections." But such blanket statement does not identify the alleged defects with sufficient factual detail. "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review).

---

[8] As Respondent points out, the record indicates that the court gave Wertman an assigned counsel form, which apparently addressed the non-payment issue.

Likewise, with respect to his claim regarding appellate counsel's performance, Wertman states only that he had a "conflict" with appellate counsel because Wertman had fired him from an appeal on a prior unrelated conviction. Again, Wertman fails to articulate what arguments counsel omitted or actions he otherwise took because of the alleged conflict.[9] Thus, these claims are simply too vague and conclusory to state a proper ground for habeas relief under either *Strickland* prong, and they must be dismissed as meritless. *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)). Accordingly, Wertman is not entitled to relief on his ineffective assistance claims.

Ground 3.  *Brady Violation*

Wertman additionally alleges that the prosecution suppressed evidence in violation of *Brady*. "To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

In support of his claim, Wertman identifies only a videotape that shows footage of Wertman and the victim attending an auction on May 14, 2011, where Wertman pressured the victim to bid on and purchase a rifle. The record indicates that, in her discovery responses, the

---

[9] Notably, the record does not indicate that Wertman brought this "conflict" to the attention of the trial judge or the Appellate Division.

prosecutor stated that Wertman could view the videotape. At an April 30, 2012 conference, Wertman himself told the court that "[t]here was a video. Shows in the video that everything was fine. Now they don't want to use it. I want to use it." The record therefore reflects that the prosecution disclosed the video, and Wertman himself watched it.

Furthermore, Wertman fails to show that the allegedly-withheld evidence constituted favorable *Brady* material. The victim testified that Wertman assaulted her after the auction, so the video is not exculpatory, and Wertman fails to convincingly articulate how the evidence could have helped his case. Wertman therefore cannot prevail on any claim that the prosecution failed to produce mandatory discovery.

Ground 4.    *Erroneous Molineux Ruling*

Finally, Wertman alleges that the trial court erred in admitting evidence of his prior domestic violence crimes against the victim. But Wertman's claim is not cognizable on federal habeas review. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

And even if it were cognizable, Wertman would not be entitled to relief because the claim is without merit. Under New York law, it is well-settled that evidence of uncharged

15

crimes or prior bad acts is admissible if it is relevant to issues of intent, motive, knowledge, common scheme or plan, or identity. *People v. Long*, 846 N.Y.S.2d 381, 382 (N.Y. App. Div. 2012). This evidence is also admissible to serve as background information or to complete the narrative of the events. *People v. Dennis*, 937 N.Y.S.2d 496, 498 (N.Y. App. Div. 2012). The probative value of the evidence must outweigh the potential prejudice to the defendant, which is determined by the trial court. *People v. Alvino*, 519 N.E.2d 808, 812 (N.Y. 1987).

In this case, as the Supreme Court concluded on direct appeal, the trial court properly admitted the evidence because it served as background information concerning Wertman's relationship with the victim and was relevant to the issue of Wertman's intent. Moreover, because it was a bench trial, the risk was minimized that the evidence of prior instances of domestic violence would be used outside of its limited purpose. Thus, the probative value outweighed any prejudice. For the foregoing reasons, this Court concludes that Wertman is not entitled to habeas relief on this claim.

## V. CONCLUSION

Wertman is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 18, 2016.

                                                      /s/ James K. Singleton, Jr.
                                                      JAMES K. SINGLETON, JR.
                                                   Senior United States District Judge